# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NCHOLAS FIDLER, ) | |
| ) | No. 17 C 6814 |
| Plaintiff, ) | |
| ) | Magistrate Judge M. David Weisman |
| v. ) | |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Deputy Commissioner for Operations, ) | |
| performing the duties and functions not ) | |
| reserved to the Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Nicholas Fidler brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the Social Security Administration Commissioner's decision denying his application for benefits. For the reasons set forth below, the Court reverses the Commissioner's decision.

## Background

Plaintiff applied for benefits on January 14, 2014, alleging a disability onset date of October 30, 2013. (R. 19.) His application was denied initially on April 3, 2014 and upon reconsideration on October 30, 2014. (R. 19.) Plaintiff requested a hearing, which was held by an Administrative Law Judge ("ALJ") on July 19, 2016. (R. 19.) On October 18, 2016, the ALJ issued an unfavorable decision finding Plaintiff not disabled. The Appeals Council declined to review the decision on July 19, 2017, leaving the ALJ's decision as the final decision of the Commissioner, reviewable by this Court pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## Discussion

The Court reviews the ALJ's decision deferentially, affirming if it is supported by "substantial evidence in the record," *i.e.*, "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). While generous, this standard "is not entirely uncritical," and the case must be remanded if the "decision lacks evidentiary support." *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. § 404.1520. Under the regulations, the Commissioner must consider: (1) whether the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether the claimant's impairment meets or equals any listed impairment; (4) if not, whether the claimant retains the residual functional capacity ("RFC") to perform his past relevant work; and (5) if not, whether he is unable to perform any other work existing in significant numbers in the national economy. *Id.*; *Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and if that burden is met, the burden shifts at step five to the Commissioner to provide evidence that the claimant is capable of performing work existing in significant numbers in the national economy. *See* 20 C.F.R. § 404.1560(c)(2).

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since October 30, 2013, the alleged onset date. (R. 21.) At step two, the ALJ found that Plaintiff has the following severe impairments: "anxiety disorder and an affective disorder." (R. 21.) At step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (R. 22.) This finding led the ALJ to conclude at step four that Plaintiff has the residual functional capacity to "perform a full range of work at all exertional levels" with certain exceptions. At step five, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform, and thus he is not disabled. (R. 28–29.)

**Weight Given to Treaters' Opinions**

Plaintiff contends that the ALJ improperly rejected the opinion of Plaintiff's treating psychotherapist, Dr. Rebeck. An ALJ is required to give a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R § 404.1527(c)(2); *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ must give good reasons for the weight that she assigns a treating physician's opinion. *Bates v. Colvin*, 736 F.3d 1093, 1101 (7th Cir. 2013); *Roddy v. Astrue*, 705 F.3d 631, 636–37 (7th Cir. 2013). If an ALJ chooses not to give a treating physician's opinion controlling weight, "the regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion." *Moss v. Astrue*, 555 F.3d 556, 561 (7th Cir. 2009); *see also* 20 C.F.R. § 404.1527(c).

In March of 2014, Dr. Rebeck noted that Plaintiff had a diagnosis of phobia, panic disorder, and depression. (R. 359.) She opined that Plaintiff had a "depressed mood," was unable to "reliably" drive alone and "completely unable to drive distances beyond 15 minutes or on expressways," unable to use public transportation unless accompanied by his wife (and even then it is difficult for him), and unable to go places alone without his safe person for "more than a few hours." (R. 356–57; 359.) She also noted that Plaintiff had serious limitations with (1) the ability to understand and remember instructions on a sustained basis, (2) the ability to respond appropriately to colleagues and customary work pressures, and (3) the ability to perform tasks on an autonomous and sustained basis. (R. 356–57.) At the time of Dr. Rebeck's assessment, Plaintiff had visited her two times a week for several months.

The ALJ failed to provide sufficient justification for only giving "some weight" to one of Dr. Rebeck's reports and "little weight" to another. (R. 26.) The ALJ inaccurately notes that one of Dr. Rebeck's reports (Exhibit 2F) identifies Plaintiff's "main problem" as reliably driving alone. (R. 26.) While this was certainly a concern reflected in Dr. Rebeck's report, it was far from the "main" concern in light of all of the other limitations identified, including difficulty interacting with others and autonomously performing simple tasks.[1] Similarly, the ALJ's decision to afford Dr. Rebeck's additional opinion (Exhibit 3F) "little weight" lacks adequate reasoning. (*Id.*) She disregarded the opinion because it allegedly conflicted with a report from the Plaintiff's former wife that suggested Plaintiff could stay home alone without issue. (*Id.*) Dr. Rebeck's report, however, is not in conflict with Plaintiff's former wife's account. As discussed above, Dr. Rebeck's report indicates that Plaintiff is unable to drive short distances alone, has difficulty coping with new people and experiences, and is unable to reliably stay at

---

[1] Respectfully, the Court is at a loss as to how the ALJ considered reliably driving alone as the "main problem" identified in Dr. Rebeck's report. The report points to a series of significant issues – all identified as "serious limitations." (R. 354–57.)

4

home alone.  (R. 359.)  This assessment aligns with Plaintiff's former wife's account that Plaintiff struggles to go places by himself (R. 218), work (R. 218), drive long distances (R. 220), manage stress (R. 223), and is only able to go to the grocery store if she accompanies him (R. 221).  Accordingly, the ALJ's stated rationales for her valuations of Dr. Rebeck's opinions are not supported by the record.

Even if Dr. Rebeck's opinions were not entitled to controlling weight, the ALJ was still required to evaluate them in accordance with the regulatory factors.  Had the ALJ considered the fact that Dr. Rebeck treated Plaintiff twice a week for several months and rendered consistent opinions supported by the record, the ALJ may have given Dr. Rebeck's opinions more weight.

The ALJ also improperly dismissed the opinion of Plaintiff's treating therapist, Janice Litvene, that noted Plaintiff avoids interactions with others, experiences "panic and fear increases" in social settings, and has trouble taking his son outside (parks, libraries, etc.).  (R. 431.)  Ms. Litvene also noted "extreme" restriction of daily living activities, maintaining social functioning, and maintaining concentration, persistence, or pace.  (R. 433.)  These opinions are consistent with the opinions of other treating sources regarding Plaintiff's significant limitations.  Despite this fact, the ALJ disregarded Ms. Litvene's opinion because the record did not provide "evidence of the claimant being extremely limited in activities of daily living, social functioning and concentration, persistence and pace."  (R. 27.)  The ALJ relies on, among other things, Plaintiff's ability to care for his son, drive, and "go places" to challenge Ms. Litvene's opinion, yet ignores the significant limitations involved with each: Plaintiff is unable to take his son to simple places like the park and unable to drive more than ten miles.  (R. 220, 431.)

The ALJ's failure to provide legitimate bases for rejecting Dr. Rebeck's and Ms. Litvene's professional opinions constitutes reversible error.

5

**Step Three Analysis**

The ALJ's failure to assign proper weight to the professional opinions of Plaintiff's treaters also resulted in a flawed Step Three analysis of the "paragraph B" criteria. At Step Three of the analysis, an ALJ must evaluate the treating source's opinion concerning whether the plaintiff has an impairment that meets or equals a listing. SSR 96-5p. The ALJ must take into consideration the treater's assessment of the following: (1) daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. 20 C.F.R. 404.1520a(d)(1), (e)(2).

Despite the opinions of Plaintiff's treaters, the ALJ determined that Plaintiff only had "mild restriction" in activities of daily living. (R. 22.) The limitations Plaintiff's treaters described, however, go well beyond "mild": Plaintiff is unable to drive short distances alone, has difficulty coping with new people and experiences, is unable to reliably stay at home alone, and has trouble taking his son outside to places like parks and libraries. (R. 359, 431.) As for limitations on social functioning, the ALJ found that Plaintiff only had "moderate difficulties." Similar to the restrictions in daily living, the record shows that Plaintiff's limitations with social functioning exceed "moderate": Plaintiff experiences "panic and fear increases" in social settings and has difficulty even putting himself in social situations. (R. 431.) Finally, with respect to concentration, persistence, and pace, the ALJ again found that Plaintiff has "moderate" difficulties, despite contrary opinions from his treaters. Indeed, Plaintiff's therapist, Ms. Litvene, concluded that Plaintiff's anxiety and affective disorders satisfy the criteria of Listings 12.06 and 12.04. Accordingly, the ALJ's failure to appropriately weigh the opinions of Plaintiff's treaters led to a flawed Step Three analysis and constitutes reversible error.

**RFC Assessment**

The ALJ's unsound Step Three analysis in turn led to an RFC assessment that fails to accommodate all limitations arising out of Plaintiff's impairments. An ALJ's RFC assessment must incorporate all of the plaintiff's limitations supported by the medical record. SSR 96-5p; 20 C.F.R. § 404.1545. Here, the ALJ determined that Plaintiff has the capacity to perform a full range of work at all exertional levels with certain limitations, including no public contact and "no more than occasional contact with coworkers and supervisors." (R. 24.) Plaintiff contends that the ALJ failed to cite medical evidence explaining her conclusion that Plaintiff has the ability to perform simple, routine, repetitive tasks. As the need for remand already exists, the Court will briefly note that the record lacks support for a finding that Plaintiff can sustain full-time contact with co-workers for all of the reasons discussed above.

**Symptom Evaluation**

Plaintiff further argues that the ALJ errored in her credibility determination/symptom evaluation in finding that the Plaintiff's statements "are not entirely consistent with the medical evidence and other evidence in the record."[2] (R. 24–25.) As that determination is informed by a proper evaluation of the medical evidence, the ALJ will have to revisit it on remand as well. The Court notes for the record that the ALJ did not provide an adequate explanation as to why she found Plaintiff's statements inconsistent with the medical evidence. She claimed Plaintiff's statements were not entirely credible without identifying which statements in particular or portions of them she did not believe. As discussed in part above, various treating professionals noted evidence of Plaintiff's limitations: (1) In February of 2014, Dr. Vincent Sackett, Plaintiff's treating psychiatrist, diagnosed Plaintiff with persistent panic disorder and agoraphobia and

---

[2] The Court agrees with Plaintiff that Defendant has issued new guidance for evaluating symptoms in disability claims, which "eliminate[s] the use of the term 'credibility'" to "clarify that subjective symptom evaluation is not an examination of an individual's character." *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016).

noted that full-time work options were "nonexistent" (R. 309); (2) Dr. Rebeck identified significant limitations in Plaintiff's ability to socialize and perform tasks autonomously (R. 354–57); and (3) Ms. Litvene, Plaintiff's treating therapist, noted that Plaintiff is restricted in activities of daily living and has difficulty maintaining social functioning as well as maintaining sustained concentration (R. 433).

## Conclusion

For the reasons set forth above, the Court grants Plaintiff's motion for summary judgment [11], denies the Commissioner's motion for summary judgment [17], reverses the Commissioner's decision, and remands this case for further proceedings consistent with this Memorandum Opinion and Order.

**SO ORDERED.**  **ENTERED:** May 24, 2018

*/s/ M. David Weisman*

**M. David Weisman**
**United States Magistrate Judge**